UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:07cv153-RJC

| | |
|---|---|
| REMEDIATION PRODUCTS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ADVENTUS AMERICAS INC., a Delaware Corporation, and ENVIROMETAL TECHNOLOGIES IN., a Canadian Corporation, | ) ) ) ) |
| | ) |
| Defendants. | ) |
| | ) |

**THIS MATTER** is before the Court on Plaintiff's motion for clarification and reconsideration (Doc. Nos. 108 & 109) of the Court's Order on Claim Construction (Doc. No. 107), Defendants' response[1] (Doc. No. 110), and Plaintiff's Reply (Doc. No. 113). Plaintiff requests a ruling on whether the dependent claims of U.S. Patent No. 5,266,213 ("the '213 Patent"), which include the phrase "Procedure of claim 1, further comprising the steps of . . .," add steps to Claim 1 or only limit an existing step(s) of Claim 1. Plaintiff also requests that the Court exercise its discretion to clarify or reconsider its construction of the following claim terms of the '213 patent: (1) "body of metal" (clarification); (2) "trench" (reconsideration); and (3) "of placing the said body of metal in the trench" (reconsideration).

I.  **STANDARD OF REVIEW**

Determinations of claim construction following a Markman hearing are interlocutory in

---

[1] In Defendants' Response, Defendants requested clarification of a few terms. Local Rule 7.1(c)(2) states that motions shall not be included in responsive briefs and each motion should be set forth as a separately filed pleading. Since Defendants did not comply with Local Rule 7.1, the Court will not consider their proposed clarifications of the Court's Order.

nature, see Nystrom v. TREX Co., 339 F.3d 1347, 1350 (Fed. Cir. 2003), and do not trigger the heightened standards for reconsideration of final orders. Mindful of Justice Frankfurter's admonition that "[w]isdom too often never comes, and so one ought not to reject it merely because it comes late," Henslee v. Union Planters Nat. Bank & Trust Co., 335 U.S. 595, 600 (1949) (Frankfurter, J., dissenting), the Court will exercise its discretion to reconsider its Order on Claim Construction. See Am. Canoe Ass'n, Inc. v. Murphy Farms, Inc., 326 F.3d 505, 514-15 (4th Cir. 2003) (holding that the district court "retains the power to reconsider and modify its interlocutory judgments, including partial summary judgment, at any time prior to final judgment when such is warranted").

## II. DISCUSSION OF DISPUTED TERMS

### A. "Further comprising"

Plaintiff requests that the Court clarify whether dependent Claims 3 and 6 add steps to the six steps of Claim 1 or merely limit certain steps of Claim 1.[2] Plaintiff asserts that the steps recited

---

[2] Claim 1 of the '213 Patent provides:
"Procedure for cleaning an halogenated organic contaminant from groundwater in an aquifer, comprising the steps, in combination,
    of providing [or supplying] a body of metal;
    of covering the body of metal in such a manner as to prevent substantially all traces of oxygen from reaching an anaerobic portion of the body of metal;
    of providing the metal in the form of a body of particulates, cuttings, or fibres,
    of such consistency that the body is permeable to the flow of the groundwater through the body;
    of conducting the said contaminated groundwater from its native aquifer into and through the body of metal;
    of so conducting the groundwater from the native aquifer into the body of metal that the groundwater substantially does not come into contact with atmospheric oxygen prior to entering the anaerobic portion of the body of metal; [and]
    of causing the groundwater to percolate through the said anaerobic portion, and to remain in contact with the metal therein, for a substantial period of time."

Claim 3 provides:
    "[The] Procedure of claim 1, further comprising the steps:
        of excavating a trench in the material of the aquifer, in the path of the contaminated groundwater;
        of placing the said body of metal in the trench;

in the dependent claims of the '213 Patent (particularly Claims 3 and 6) are in addition to the six steps recited in independent Claim 1. Defendants contend that Claim 3 does not add two additional steps, but rather makes a further narrowing description of the conducting step in Claim 1. Defendants further argue that Claim 6 does not add additional steps but rather makes a narrowing description of the covering and conducting step in Claim 1.

The construction of the phrase "further comprising" includes additional recited elements. The phrase "further comprising," standing alone and in light of its use in a dependent claim context, simply means that the dependent claim adds additional steps to Claim 1. Accordingly, the phrase "further comprising" means: the dependent claim includes additional steps.

Having concluded that "further comprising" adds additional steps to Claim 1, Plaintiff further requests that the Court reconsider its determination that "conducting" in Claim 1 can be achieved passively or actively. Plaintiff contends that if the "conducting" step of Claim 1 could be met by "placing the body in an appropriate position relative to the contaminated groundwater," then the "conducting" step of Claim 1 would be superfluous or meaningless in view of the additional steps of dependent Claims 3 and 6. The Court would first point out that it did not wholeheartedly adopt the construction of "conducting" as proposed by the Defendant.[3] The Court concluded simply that

---

Claim 6 provides:
    "[The] Procedure of claim 1, further comprising the steps:
        of providing a series of boreholes in the material of the aquifer, in the path of the contaminated groundwater;
        of injecting metal into the boreholes;
        wherein the spacing of the boreholes, and the quantity of metal injected, in relation to the material of the aquifer, are such that the injected metal penetrates into the material to a sufficient extent as to form the said body of metal, and the said anaerobic portion thereof."

[3] (Doc. No. 31 at 24 (defendants assert that "conducting" meant "the contaminated groundwater does pass into and through the collection of particles of metal. Conducting of the groundwater can be achieved by placing the body of metal in an appropriate position relative to the contaminated groundwater")).

3

the term conducting meant "passing through" and could be achieved actively or passively. (Doc. No. 107 at 4). The Court does not find that its construction of "further comprising" makes the conducting step of Claim 1 superfluous or meaningless. See ACS Hosp. Sys., Inc. v. Montefiore Hosp., 732 F.2d 1572, 1577 (Fed. Cir. 1984) ("Claims are to be read and construed in light of the specification and the prosecution history of the patent. Further, claims should be so construed, if possible, as to sustain their validity."). Claim 1 requires that the procedure for cleaning the contaminated groundwater must cause the contaminated groundwater from its native aquifer to pass through and into the body of metal (actively or passively). Claims 3 and 6 simply create two methods for the procedure and describe where the trench and the boreholes must be placed–in the path of the contaminated water. Claims 3 and 6 do not discuss how the water must be conducted, the language simply discusses the location of the embodiment used to clean the groundwater. The Court is convinced that within the context of the '213 Patent, the term conducting can be actively or passively achieved depending on the embodiment used to clean the contaminated groundwater.

      B.    "Body of Metal"

The Court previously construed the term "body of metal" to mean "a collection of particles of metal into an amount." (Doc. No. 107 at 3). The Court clearly did not include anything other than metal in its construction of the term. To the extent that the term needs to be clarified, the Court finds that the body of metal does not include anything other than metal particles.

      C.    "Trench"

Plaintiff requests that the Court reconsider its construction of the term trench because Plaintiff asserts that it is improper to define the trench by its contents. The Court construed the term trench to embody a "single trench" and then went on to include language from the specification to

4

discuss what could go in the trench. To the extent that the term trench must be reconsidered, the Court construes the term "trench" as a "single trench."

        D.     "Of placing the said body of metal in the trench"

Plaintiff requests that the Court reconsider its construction of the term "of placing the said body of metal in the trench." The Court construed the term to mean "of placing the metal in the trench." To be consistent with the Court's previous determination of "body of metal," the Court will reconsider its construction. The term "of placing the said body of metal in the trench" will hereafter be construed to mean "of placing the collection of particles of metal into an amount in the trench."

### III. CONCLUSION

For the reasons stated, the Court **GRANTS** in part and **DENIES** in part Plaintiff's motion for clarification and reconsideration. The Court's Order of October 10, 2008, will be amended so as to reflect the modifications of the constructions discussed above.[4]

**SO ORDERED**.

                              Signed: January 7, 2009

Robert J. Conrad, Jr.
Chief United States District Judge

---

[4] For the parties convenience, the Court has attached a chart summarizing its construction of the disputed claim language of the '213 Patent with any modifications made in this Order.

| Disputed Term | Court's Construction |
|---|---|
| "Comprising" | Court construes "comprising" to mean "including, but not limited to" the steps following in the patents. |
| "Further Comprising" | Court construes "further comprising" to mean "the dependent claim includes additional steps." |
| **'213 Patent** | |
| "Body of Metal" | Court construes "body of metal" to mean "a collection of particles of metal into an amount." The body of metal includes only metal particles. |
| "Anaerobic portion of the body of metal" | Court construes "anaerobic portion of the body of metal" to mean "the portion of the body of metal that will not rust." |
| "Permeable to the flow of the groundwater" | Court construes "permeable to the flow of groundwater" to mean the body of metal is "of such consistency that the groundwater can pass through the metal particles." |
| "Conducting" | Court construes "conducting" as "passing through" which can be achieved passively or actively. |
| "Percolate" and "for a substantial period of time" | Court construes "percolate" as "flow" and finds that "for a substantial period of time" is not limited to one or two days. |
| "Of placing the said body of metal in the trench" | Court construes the term as "of placing the collection of particles of metal into an amount in the trench." |
| "The trench" | Court construes the term "a trench" to embody "a single trench." |
| "Body of metal" and "anaerobic portion" | Court construes the terms as "a collection of metal particles into an amount that is injected into the boreholes in such a way that consists of a continuous wall of filings that is not exposed to atmospheric oxygen in a manner that would cause rust." |