IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL NO. 3:07-CV-153-RJC-DCK

| | |
|---|---|
| REMEDIATION PRODUCTS, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| ADVENTUS AMERICAS, INC., ) | |
| a Delaware Corporation, and ) | |
| ENVIRONMENTAL TECHNOLOGIES, ) | |
| INC., a Canadian Corporation, ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER IS BEFORE THE COURT** on the "Motion to Dismiss Portions of Plaintiff's First Amended Complaint Pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure" (Document No. 99) filed by Adventus Americas, Inc. and Environmental Technologies, Inc. ("Defendants"). The Plaintiff opposes the motion. (Document No. 102). This matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b), and is ripe for consideration. Having fully considered the record, including the parties' briefs (Document No. 99, 100, 102, 106), the undersigned recommends that the motion should be **denied,** based upon the following proposed findings of fact and conclusions law:

### I. Background

Remediation Products, Inc. ("Plaintiff" or "RPI") filed a Complaint in this Court on April 6, 2007. (Document No. 1). Plaintiff later sought, and was given, leave to amend. (Document Nos. 74, 92). In its Amended Complaint (Document No. 170), Plaintiff indicates that it is a Colorado corporation that "creates and markets products that assist in removal of chlorinated compounds and

hydrocarbons from contaminated soils and groundwater" and that it markets its BOS 100® and other products in North Carolina and elsewhere. (Document No. 170, ¶ 4).

The Amended Complaint further indicates that Defendant EnviroMetal Technologies Inc. ("ETI") is a Canadian corporation that licenses and markets environmental remediation technology and services for the treatment of groundwater. (*Id*., ¶ 5). Defendant Adventus Americas Inc. ("Adventus") is a Delaware corporation, headquartered in Illinois, that also creates and markets products that help remove contamination from soils and groundwater. (*Id*. ¶ 6). As alleged, both Defendants are operating subsidiaries of Adventus Intellectual Property Inc. The Plaintiff indicates that ETI and Adventus market, license, and perform environmental remediation in North Carolina. (*Id*. ¶¶ 5-6).

According to Plaintiff, ETI is the exclusive licensee of the "213 and 154 patents," and Adventus is a sub-licensee. (*Id*., Exh. A-B). These Defendants license the technology under the 213 and 154 patents in the United States, including in North Carolina. In early 2005, Adventus contacted Plaintiff in regards to licensing under the these patents and indicated "it intended to enforce its rights under the two patents, but was amenable to reviewing any information indicating that Plaintiff's technology was unrelated to these patents. (*Id*. ¶ 15). In July of 2005, representatives of ETI and RPI met to discuss the matter, but were unable to reach any agreement. (*Id*. ¶17).

In short, the Defendants insisted on licensing and payment of royalties by Plaintiff, whereas Plaintiff insisted that its BOS 100 product does not infringe the two patents. Plaintiff contends that its product is much quicker and more efficient that the Defendants' product. (*Id*. ¶25). Although the parties thereafter continued to correspond in an effort to reach an agreement, they were unable to resolve their differences and this lawsuit ensued.

## II. Allegations of the Amended Complaint

Plaintiff's Amended Complaint seeks a declaration that 1) Plaintiff's use of its BOS 100® product for soil and groundwater remediation does not infringe United States Patent Nos. 5,266,213 and 5,534,154, and 2) that both patents are invalid. (Document No. 170, ¶1). Plaintiff contends that the 213 and 154 patents are invalid, unenforceable, and/or void under 35 U.S.C. §§ 102, 103, and/or 112. (*Id*. ¶ 34). Plaintiff alleges that the "Defendants are falsely claiming that their licensed technology is the functional and compositional equivalent of RPI's BOS 100® product" and are "knowingly, intentionally, and willfully asserting the '213 patent, which was obtained by fraud." The Plaintiff claims that the patents are not unenforceable due to inequitable conduct. Plaintiff contends that the Defendants have wrongfully demanded royalties from Plaintiff's customers, thereby interfering with its business. Plaintiff asserts claims under the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 ("UDTPA") and the Colorado Consumer Protection Act, C.R.S. § 6-1-105 *et seq*.

### III. Arguments for Dismissal

Defendants seek 1) dismissal of Counts 3 and 4 of the First Amended Complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted; 2) dismissal of Counts 4 and 6 pursuant to Rule 9(b) for failure to allege fraud with particularity; and 3) dismissal of Counts 5 and 6 (to the extent that such claims rely on the allegations contained in paragraphs 78-83 of Plaintiff's First Amended Complaint) for failure to state a claim upon which relief can be granted. As grouped, consideration of these issues would lead to a disjointed analysis, and therefore, the undersigned will consider each of these counts individually.

### IV. Relevant Standard

**Civil Rules 8 and 9**

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain

statement of the claim showing that the pleader is entitled to relief." Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Rule 9(b) of the Federal Rules of Civil Procedure further requires that "a party must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). The particularity requirement is intended (1) to provide defendants with fair notice of plaintiff's claim; (2) to protect defendants from harm to their reputation or good will; and (3) to reduce the number of nuisance suits. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 740 (1975); *Weill v. Dominion Resources, Inc.*, 875 F.Supp. 331, 338 (E.D.Va. 1994); Fed.R.Civ.P. 9(b).

### Civil Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, the facts alleged "must be enough to raise a right to relief above the speculative level" and must provide "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555. A court should view the complaint and all reasonable inferences in the light most favorable to the Plaintiff. *Boring v. Buncombe County Bd. of Educ.*, 136 F.3d 364, 367 (4th Cir. 1998). The court must accept as true all of the well-pleaded factual allegations of the complaint. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, n. 1 (2002). However, the court need not "accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. The court also need not accept as true "unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Markets, Inc. v. J.D. Associates Long Term Disability Partnership*, 213 F.3d 175, 180 (4th Cir. 2000).

Although the Defendants vigorously dispute the merits of Plaintiff's claims, the Plaintiff aptly points out that the Defendants have largely bypassed the standard of Rule 12(b)(6) by arguing

the merits of the case. At this pleading stage, the Plaintiff need only state a claim, not prove it. However, because the Defendants argue matters well beyond the parameters of a motion to dismiss, Plaintiff also addresses the merits of the claims. However, the undersigned will confine the present analysis to whether the Plaintiff's claims have sufficiently been stated in the Complaint. In light of the separately-pending motions for summary judgment, and in the interests of clarity, the undersigned will consider only matters within the pleadings and will not convert the present motion to dismiss into a motion for summary judgment.[1]

## IV. Analysis

### A. Whether Count 3 States a Claim for Relief

Count 3 alleges "inequitable conduct" with respect to the issuance of Patent 213. An applicant seeking a patent has a duty to prosecute the patent before the Patent and Trademark Office ("PTO") with candor and good faith and to disclose information known to the applicant to be material to patentability. *Purdue Pharma L.P. v. Endo Pharmaceuticals Inc.*, 410 F.3d 690 (Fed. Cir. 2005). Inequitable conduct may arise from an applicant's affirmative misrepresentation of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive or mislead the PTO. *Id.* It is well-settled that negligence alone, even gross negligence, does not establish inequitable conduct. *Hoffmann-La Roche, Inc. v. Promega Corp.*, 323 F.3d 1354, 1377 (Fed.Cir. 2003).

A claim of "inequitable conduct" requires a showing of the misrepresentation or omission of a material fact, coupled with an intent to deceive the Patent and Trademark Office ("PTO"). Both elements must be proven by clear and convincing evidence. *Id.*; *Manville Sales Corp. v. Paramount*

---

[1] The parties have extensively briefed multiple recent motions for summary judgment.

*Sys., Inc.*, 917 F.2d 544, 552 (Fed.Cir. 1990). "To satisfy the intent to deceive element of inequitable conduct, 'the involved conduct, viewed in light of all the evidence, including evidence indicative of good faith, must indicate sufficient culpability to require a finding of intent to deceive.'" *Paragon Podiatry Laboratory, Inc. v. KLM Laboratory, Inc.*, 984 F.2d 1182, 1189 (Fed. Cir. 1993). Essentially, Plaintiff alleges that the patent agent/inventor knowingly withheld and failed to disclose certain material information about prior art during the patent issuance process. Defendant contends that this prior art was merely "cumulative" and not material.

Plaintiff asserts that to prevail on its claim of inequitable conduct, it must show by clear and convincing evidence that: (1) Dr. Gilliam "withheld material information from the PTO, and (2) the information was withheld with the intent to deceive the PTO." *GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1273 (Fed. Cir. 2001). Again, the issue presently before this Court is whether Plaintiff has sufficiently stated a claim for "inequitable conduct," not whether it has proven its case. A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992); *Eastern Shore Markets,* 213 F.3d at 180.

Count 3 identifies the specific prior art (referring to research published in Japanese by the author's last name "Senzaki") and alleges that the inventor (Dr. Gilliam) was aware of this prior art prior to issuance of the 213 patent (Doc. No. 170, ¶¶ 51, 54-55). Count 3 further alleges that this prior art (Senzaki) was material, explains why it was allegedly material, and asserts that the inventor withheld the prior art (Senzaki) with the intent to deceive the Patent Examiner in order to obtain issuance of the '213 patent (*Id*. ¶¶ 51, 58-64, 75). Plaintiff has alleged specific facts regarding the materiality of Senzaki and the inventor's awareness and knowledge of Senzaki and its materiality.

(*Id*. ¶¶ 65-75). These allegations are adequate to inform the Defendants of the basis for Plaintiff's claim of inequitable conduct. Count 3 of the Amended Complaint sufficiently states a claim of "inequitable conduct," and thus, satisfies the basic requirements of Rule 12(b)(6).

### B. Whether Count 4 Alleges Fraud With Particularity and States a Claim

In Count 4, Plaintiff "alternatively" alleges fraud on the patent office with respect to the issuance of Patent 213. A patent may be held invalid for fraud where the Applicant makes a misrepresentation or omission to the Examiner with clear intent to deceive and cause the PTO to grant an invalid patent. *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1070 (Fed. Cir. 1998).

The alleged materiality of Senzaki and Dr. Gilliam's knowledge of Senzaki and its materiality are specifically pled in Count 3 and incorporated into Count 4. (Document No. 170, ¶ 78). This includes the allegation that the inventor withheld the prior art (Senzaki) with the intent to deceive the Patent Examiner in order to obtain issuance of the '213 patent (*Id*. ¶ 51). Plaintiff further alleges in Count 4 that:

> "the inventor and/or patent agent prosecuting the '298 patent application made a knowing, willful and intentional misrepresentation and/or omission before the United States Patent and Trademark Office, including but not limited to the failure to cite Senzaki (1988) during prosecution of the '298 application leading to the issuance of the '213 patent. Upon information and belief, ETI, the exclusive license of the '213 patent, also claimed small entity status and paid maintenance fees based on the claim small entity status" (*Id*. ¶79).

Defendant contends that Dr. Gilliam "had a subjective, good-faith belief that Senzaki was merely duplicative" of other prior art ("Sweeney"). (Document No. 100, p. 19). Although the parties vigorously dispute whether Senzaki was "material" prior art, the Court must construe the allegations of Count 4 in the light most favorable to Plaintiff. Plaintiff alleges that prior to the issuance of the

213 patent, Dr. Gilliam obtained a translation from Japanese of the Senzaki prior art (*Id*. ¶¶ 52-56) and cited it in a technical article he wrote. (*Id*. ¶65). Plaintiff further contends that Dr. Gilliam did not disclose Senzaki in a telephone interview with the patent agent on June 11, 1993. (*Id*. ¶67). Plaintiff alleges that, in its patent disclosure statement on June 25, 2001, the "patent agent stated that the applicant had no information or translations of Senzaki." (*Id*. ¶72).

Giving the Plaintiff the benefit of all reasonable inferences here, the Complaint sufficiently alleges that the inventor/patent agent made a fraudulent misrepresentation or material omission to the Patent Examiner with clear intent to deceive and cause the PTO to grant an invalid patent. Count 4 satisfies the particularity requirement of Rule 9. Count 4 also states a claim for fraud on the patent office for purposes of Rule 12(b)(6). The undersigned, of course, expresses no opinion as to whether these claims will withstand summary judgment.

### C. Whether Count 5 States a Claim for Relief

Defendant contends that Count 5 fails to state a claim for relief. Count 5 alleges violation of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen Stat. § 75-1.1. To state a claim for unfair and deceptive trade practices under this statute, the plaintiff must allege that "(1) defendants committed an unfair or deceptive act or practice; (2) in or affecting commerce; and (3) that plaintiff was injured thereby." *Griffith v. Glen Wood Co.*, 184 N.C.App. 206, 217 (2007); *see also, Dalton v. Camp*, 353 N.C. 647, 548 S.E.2d 704, 711 (2001); *Freeman v. Duke Power Co.*, 114 Fed. Appx. 526, 535 (4th Cir. 2004).

"The purpose of G.S. 75-1.1 is to provide a civil means to maintain ethical standards of dealings between persons engaged in business and the consuming public within this State, and [it] applies to dealings between buyers and sellers at all levels of commerce." *Sara Lee Corp. v. Carter*, 351 N.C. 27 (1999); see also, *Triton Industries, Inc. v. Riverwalk In Highlands, LLC*, 673 S.E.2d

167, 2009 WL 368322, *4 (N.C.App.). "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Griffith*, 184 N.C.App. at 217; *Bartlett Milling Co., L.P. v. Walnut Grove Auction & Realty Co.*, 665 S.E.2d 478, 486 (2008).

This claim is necessarily dependent upon the validity of the two patents, which the Defendants are aggressively enforcing. In fact, the Defendants move to dismiss this claim only to the extent that it relies "on the allegations contained in paragraphs 78-83 of Plaintiff's First Amended Complaint." (Document No. 99, p.1). Paragraphs 78-83 comprise the Plaintiff's "alternate" allegations regarding fraud on the PTO. Plaintiff's Amended Complaint alleges that:

> "In January 2007, counsel for ETI and Adventus contacted at least one North Carolina company doing business with RPI and planning to use the BOS 100® product for a contaminated site that the company owns in Charlotte, North Carolina and accused the use of the BOS 100® product of infringing the '213 and/or the '154 patents. ETI and Adventus have demanded a royalty from the property owner for its use of RPI's BOS 100® product and technology." (*Id.* ¶ 26).

Plaintiff essentially alleges that the Defendants have wrongfully attempted to collect "royalties on remediation methods that are not covered by any valid claim of the 213 and 154 patents." (*Id.* ¶ 27). Plaintiff further complains that Defendants have falsely told Plaintiff's North Carolina customers that they "provide the same or essentially the same product as the BOS 100® product for less money," when in fact, Plaintiff's remediation process is much faster, *i.e.* it takes six months instead of five years." (*Id.* ¶ 25, 28). Plaintiff sets forth facts indicating that these alleged acts have affected commerce and explains how the alleged acts have harmed Plaintiff and its customers. (*Id.* ¶ 33).

At this stage of the pleadings, the Court must view the allegations in the light most favorable to the Plaintiff. Assuming for purposes of this motion that all the well-pleaded allegations of the Complaint are true, and drawing all reasonable inferences in Plaintiff's favor, Count 5 sufficiently

states a claim for unfair and deceptive trade practices under N.C. Gen Stat. § 75-1.1. Moreover, given the recommendation that the Plaintiff has adequately stated its "alternative" claim of fraud on the PTO, the Defendants have not shown grounds for limited dismissal to the extent that Count 6 relies "on the allegations contained in paragraphs 78-83 of Plaintiff's First Amended Complaint."

### D. Whether Count 6 Alleges Fraud With Particularity and States a Claim

Like Count 5, this claim is in part dependent upon the validity of the two patents, which the Defendants are aggressively enforcing. Defendants therefore contend that Count 6 should also be dismissed for failure to allege fraud with particularity "to the extent that such claims rely on the allegations contained in paragraphs 78-83 of Plaintiff's First Amended Complaint" and for failure to state a claim for relief. (Document No. 99, p. 1). Plaintiff has adequately stated its "alternative" claim of fraud on the PTO, and thus, Defendants have not shown grounds for limited dismissal insofar as Count 5 relies "on the allegations contained in paragraphs 78-83 of Plaintiff's First Amended Complaint."

As to whether Count 6 states a claim for relief, Count 6 alleges unfair or deceptive trade practices under the Colorado Consumer Protection Act ("CCPA"), C.R.S. § 6-1-105 et seq. To state a claim under the CCPA, a plaintiff must allege that: (1) the defendant engaged in an unfair or deceptive trade practice; (2) the challenged practice occurred in the course of the defendant's business; (3) the challenged practice significantly impacts the public as actual or potential consumers of the defendant's goods and services; (4) the plaintiff suffered injury in fact to a legally protected interest; and (5) the challenged practice caused the plaintiff's injury. *Brodeur v. American Home Assur. Co.*, 169 P.3d 139 (2007). Count 6 recites each element of this language.

Although the recitation in Count 6 is not factually specific, Plaintiff's Amended Complaint also explains elsewhere that:

> "Defendants are falsely claiming, inter alia, that their licensed technology is the functional and compositional equivalent of RPI's BOS 100® product. Upon information and belief, Defendants are also knowingly, intentionally, and willfully asserting the '213 patent, which was obtained by fraud." (Document No. 170, ¶ 2).

The Amended Complaint alleges that Defendants intentionally asserted a patent obtained by fraud and in the course of business competition with Plaintiff, are making "false or misleading statements about Defendants' product, including false or misleading comparisons of Defendants' product and RPI's product." (Document No. 170, ¶ 28, 89). Plaintiff alleges that, unlike Defendants' product, the Plaintiff's product is "a carbon-based product" that enables remediation of groundwater in a mere six months, and that the Defendants' references to carbon in its process are misleading. (*Id.* ¶ 28-29). Plaintiff explains and alleges significant impacts on customers and the public with resulting alleged injury. (*Id.* ¶ 23-35). Assuming for purposes of this motion that all the well-pleaded allegations of the Complaint are true, and drawing all reasonable inferences in Plaintiff's favor, Count 6 sufficiently states a claim for unfair and deceptive trade practices under C.R.S. § 6-1-105 *et seq*.

**IT IS, THEREFORE, RECOMMENDED** that the Defendants' "Motion to Dismiss Portions of Plaintiff's First Amended Complaint Pursuant to Rules 9(b) and 12(b)(6)" (Document No. 99) should be **DENIED**.

### V. Notice of Appeal Rights

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(c), written objections to the proposed findings of fact and conclusions law and the recommendations contained in this memorandum must be filed within ten (10) days after service of same. *Snyder v. Ridenour*, 889 F.2d 1363, 1365 (4th Cir.1989); *United States v. Rice*, 741 F.Supp. 101, 102 (W.D.N.C.1990). Failure to file objections to this memorandum with the District Court constitutes a waiver of the right to *de*

*novo* review by the District Court, *Snyder,* 889 F.2d at 1365, and may preclude the parties from raising such objections on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841, 845-46 (4th Cir.1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir.1984).

Signed: July 29, 2009

David C. Keesler
United States Magistrate Judge